HAROLD W. GOUGH
1220 Rosecran Street
San Diego, CA 92106
619 573 8876

**FILED**

**2008 JUL 28 PM 4:19**

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ _KNA_ _DEPUTY

*In Propria Persona*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA AT SAN DIEGO

| | |
|---|---|
| HAROLD H.W. GOUGH, *In Personam,*<br>TYEE, U.S. Documented Vessel, *In Rem,*<br><br>        Plaintiff,<br><br>    .v.<br><br>U.S. NAVY, U.S. COAST GUARD, SAN<br>DIEGO HARBOR POLICE, SAN DIEGO<br>PORT AUTHORITY, UNITED STATES<br>COAST GUARD, SEA TOW VESSEL<br>ASSISTANCE, VESSEL ASSIST, In<br>their Official & Individual<br>Capacities, and DOES 1 THRU 10,<br><br>        Defendants. | Case No.<br><br>**'08 CV 1360 BTM BLM**<br><br>VERIFIED COMPLAINT FOR DECLARATORY AND<br>INJUNCTIVE RELIEF; DAMAGES (COMPENSATORY,<br>EXEMPLARY, AND PUNITIVE); EXHIBITS; AND<br>DECLARATIONS |

I.

INTRODUCTION

1.    Plaintiff, H.W. Gough, *in propria persona,* hereby respectfully

petitioning the Honorable Court for an ~~California Code § 2035.010 hearing~~ TRIAL HW

based on an unforeseeable, unintended, and uncontrollable incident that

occurred on or about 23 May 2008 (Memorial Weekend) that cause extreme

damages to one U.S. Documented sailing vessel "Tyee" with structural and

cosmetic damages to the Tyee due directly and/or indirectly and/or

- 1 -

proximately due to the dilatory actions, inactions, with malicious and utter disregard to plaintiff-captain GOUGH and his passenger's physical life & limb & personal property, by the named respondent organization and their individuals/persons, and/or their subordinate officers, including private contractor/contractee entities, and/or U.S. government and California state & municipal public civil servants-personnel.

II.

PARTIES

2.   The plaintiff, H.W. Gough ("GOUGH"), is a 73-year old decorated retired veteran (two "Purple Hearts," twenty "Air Medals," and the "Silver Star" amongst other military decorations) of two wars (Korean and Vietnam) and is the sole owner-captain of the United States Coast Guard Documented ketch-rigged, ended-stern, and as state one of forty-four to have been built as a "CT-48" all teak interior. For all intensive purposes GOUGH is the owner and was the captain of the Tyee on the fateful night of 23 May 2008 leading to this admiralty & maritime suit against the below named organizations, their civil *para*military personnel and private business entities.

3.   The *in rem* plaintiff "Tyee" is a U.S. documented 48' ketch-rigged, double-ender with a tonnage of 83,000, sailing vessel with the following identification numbers: #593787 (U.S. Documentation) and is only 1 of 44 known to exist worldwide.

4.   The defendant United State Navy is an federal government organization responsible for protecting the life, limb, & property of all Americans, Californians, and San Diegan who utilize not only the inner bay of San Diego city, California, but also the inner and outer territorial seas/oceans. Their primary purpose is to assist, defend, and protect the lives, liberties, and property of Americans, Californians, and San Diegan in need of the superior ·professional abilities and equipment available to execute that

- 2 -

VERIFIED ADMIRALTY & MARITIME COMPLAINT

lawful and including inner/high seas/oceans constitutionally-based duty to provide maritime distress emergency assistance to Americans, Californian, and San Diegan in the local waters.

5. The defendant United State Coast Guard is an joint federal-state government organization responsible for protecting the life, limb, & property of all Americans, Californians, and San Diegan who utilize not only the inner bay of San Diego city, California, but also the inner and outer territorial seas/oceans. Their primary purpose is to assist, defend, and protect the lives, liberties, and property of Americans, Californians, and San Diegan in need of the superior professional abilities and equipment available to execute that lawful and including inner/high seas/oceans constitutionally-based duty to provide maritime distress emergency assistance to Americans, Californian, and San Diegan in the local waters.

6. The defendant San Diego Port Authority is presently a joint state-federal federal government organization responsible for protecting the life, limb, & property of all Americans, Californians, and San Diegan who utilize not only the inner bay of San Diego city, California and has the inherent jurisdictional authority to provide assistance to both the defendant United States Navy and United States Coast Guard in any maritime emergency that may require their subordinate personnel or other state and/or private entities. Their primary purpose is to assist, defend, and protect the lives, liberties, and property of Americans, Californians, and San Diegan in need of the superior professional abilities and equipment available to execute their lawful maritime duty to protect and serve individuals and their property anywhere within their territorial jurisdiction and any civil/lawful/constitutionally-based duty to provide maritime distress emergency assistance to Americans, Californian, and San Diegan in the local waters.

- 3 -

7. The defendant San Diego Harbor Police is directly jointed with the named defendant San Diego Port Authority and is a joint state-federal government organization responsible for protecting the life, limb, & property of all Americans, Californians, and San Diegan who utilize not only the inner bay of San Diego city, California, but also the territorial areas immediately adjacent the San Diego bay harbor entrance. Furthermore, Plaintiff alleges that in time of maritime emergencies the San Diego Harbor Police may and should provide their personnel & city-state equipment to boaters in maritime distress. Their primary purpose is to assist, defend, and protect the lives, liberties, and property of Americans, Californians, and San Diegan in need of the superior professional abilities and equipment available to execute that lawful and including inner/high seas/oceans civil/lawful/constitutionally-based duty to provide maritime distress emergency assistance to Americans, Californian, and San Diegan in the local waters.

8. The defendant Sea Tow is a private business entity contracted to both state & federal governmental organizations and other entities of the San Diego city proper waterfront that provides both private and government services to assist any of the state-federal organizations with non-emergency assistance when requested. Other than their private business interests their private business along with admiralty & maritime purposes is to provide assistance and protect the life & limb, legal/moral humanitarian liberties, and property of Americans, Californians, and San Diegan in need of the professional abilities and equipment available to execute that lawful and municipal-state-federal contractorial duties.

9. The defendant Vessel Assist is a private business entity contracted to both state & federal governmental organizations and other entities of the San Diego city proper waterfront that provides both private and government services to assist any of the state-federal organizations with non-emergency assistance when requested. Other than their private business interests their

- 4 -

private business along with admiralty & maritime purposes is to provide emergency and non-emergency maritime distress assistance and protect the life & limb, legal/moral humanitarian liberties, and property of Americans, Californians, and San Diegan in need of the professional abilities and equipment available to execute that lawful and municipal-state-federal contractorial duties and obligations.

III.

GOVERNMENT TORT CLAIM

10.   Plaintiff has sent a state of California Government Tort Claim to the Government Tort Claim Program's office on or about 28 June 2008. Attached to that claim form was a California Code § 2035.010 Presuit Discovery Petition with similar claims, averments, exhibits, and cause for a government to tort claim (with underpinning claim of a civil tort complaint). Plaintiff has not received any response from that state agency but finds it necessary to protect his ownership rights and to restore the Tyee to its original *status quo* condition in an expeditious manner to ensure the seaworthiness of that sailing vessel to be in compliance with any municipal, state, and/or federal statutes, regulations, and/or municipal port authority ordinances.

11.   It is Plaintiff GOUGH's allegation/contention that the Federal Tort Claims Act, 28 U.S.C. § 2680(H), as *amended* in 1974, the named defendants are not entitled to any claim of immunity of his [or her or organizational] action[s] under any usage of any affirmative defenses recognized in statutorial/regulatorial/decisional laws under "[t]he Federal Tort Claims Act, 28 U.S.C. U.S.C. § 2680(h) . . . where the claim arise[s] out of assault, malicious prosecution, abuse of process, *libel*, *slander* . . . where[, according to the 1974 amendment to the Act,] with regard to the acts or omissions of investigative or law enforcement officers." *See* Davis,

- 5 -

*Administrative Law Treatise*, (1984 ed.) at § 27:17 (Tort Liability) at pg. 88 of 1984 edition (emphasis added).

IV.

JURISDICTION OF THIS COURT

*IN PERSONAM*

12.    Plaintiff GOUGH is a long-time resident of America, California, and San Diego County is a layperson, untrained in law or the procedures thereof alleges that venue jurisdiction is properly invoked by this Court under the provisions of Admiralty & Maritime laws applicable to the facts and circumstances set forth below.

///

///

///

///

///

*IN REM*

14.    Plaintiff, Tyee, the United States Coast Guard documented sailing vessel alleges *viz.* plaintiff GOUGH that it enjoys both venue and subject *in rem* jurisdiction by virtue of the fact it is a documented vessel protected by traditional Admiralty & Maritime law on the inner/high seas/oceans and the Incident occurred while being operating by plaintiff GOUGH.

15.    Plaintiff, Tyee, also enjoys *viz.* plaintiff GOUGH both venue and subject matter *in rem* jurisdiction by virtue of the fact that it is not only a United States Coast Guard documented sailing protected by Admiralty & Maritime law on the inner high seas/oceans but that it also has enjoyed a transit stay in San Diego bay under the supervision and control of plaintiff GOUGH while in the local territorial jurisdiction of the named defendant San Diego Port Authority and its subordinate San Diego Harbor Police territorial

- 6 -

1   jurisdiction.  Thusly, this those named herein this paragraph had and

2   independent duty to provide emergency local waters emergency distress

3   assistance under the facts and circumstances of this Incident as more fully

4   described below.

CONCURRENT VENUE & SUBJECT MATTER JURISDICTION[1]

5   16.  Plaintiff GOUGH and *in rem* plaintiff Tyee allege that both the state

6   of California and Federal Government have concurrent jurisdiction (*see*

7   Judiciary Act of 1789)[2] and/or F.R.C.P. 9(h) over both venue and subject

8   matter jurisdiction by accords, contracts, or other legal devices which

9   provides that each of the governmental organization may invoke their

10  jurisdictional authorities, powers, and control over any given situation

11  under admiralty & maritime emergency distress and non-emergency events to

12  protect the life & limb and property of any American(s), Californian(s), San

13  Diegan, and their personal properties in the event of any necessary actions

14  to protect the said parties and their properties.

15  17.  The private business entities defendants Sea Tow and Vessel Assist

16  also have an independent civil/contractual duty to provide admiralty &

17

18

---

19  [1]  "The Federal Act of 1789 established the United States Courts and defined
    their jurisdiction as contemporaneous construction [footnote omitted] and
20  implementation of the Constitution.  It confirmed the jurisdiction of the
    common law courts by providing that the United States District Courts shall
21  have 'exclusive original cognizance of all civil causes of admiralty and
    maritime jurisdiction . . . saving to suitors, in all cases, the right of a
    common law remedy, where the common law is competent to give it."  *See also*
22  Benedict on Admiralty, Matthew Bender & Company, Inc. (7th Ed.) at § 121, 8-2
    (quoted from).  Moreover, by accord or other legal devices entered into by
23  the municipality of San Diego city, the state of California and the United
    States of America's federal government there appealingly is a concurrent
24  arrangement which provides concurrent venue/subject/terroritorial
    jurisdiction over all admiralty and maritime distress emergencies and non-
25  emergency situations.

26  [2]  "The Constitution of the United States provides that the jurisdictional
    power of the United States shall extend to 'all cases of admiralty and
27  maritime jurisdiction.'"  United States Constitution, Article III, §; *see
    also* Benedict on Admiralty, Matthew Bender & Company, Inc. (7th Ed.) at §
28  122, 8-3 (quoted from; internal eclipses originally in text of treatise).

- 7 -

maritime assistance under their contracts/agreements to the state-federal organizations and under the laws of this civilized society's expectations on San Diego bay, inner/outer seas/oceans if necessary in the event of any maritime emergency or non-emergency if the situation calls for immediate assistance to distressed American, Californian, and San Diegans.

V.

### STATEMENT OF THE FACTS RE CAUSES OF ACTION

18.   Although more fully described below as to the details of the in-question at-issue incidents that occurred while the *in rem* plaintiff Tyee and its Captain plaintiff H.W. Gough and his passenger-companion, Ms. Jacqueline Lambert, were under a clear and present danger to life, limb, and property.

19.   Plaintiff GOUGH declares & verifies under penalty of perjury the following:

20.   On or about the 23 of May 2008, *in rem* plaintiff GOUGH was anchored his sailing vessel, plaintiff "Tyee", on the beach or shoal located just south of the entrance to San Diego Bay.  The location of the incident is more fully described as a U.S. Navy Security Zone designated as "Western Beach" (end of U.S. Navy's North Island facility/base adjacent to the magazine area).

21. Plaintiff GOUGH and his passenger contend that the sole reason for their being there in the so-called "U.S. Navy Security Zone" rather than in the San Diego Bay's designated free anchorages was the direct result of a last minute cancellation of his defendant San Diego Port Authority regulatorialy required "anchorage permit"[3] which the defendant San Diego Harbor Police Transit Dock office authorities had already granted the permit. Put another way Plaintiff GOUGH was GRANTED PERMIT to anchor in the La Playa anchorage inside the bay was revoked without due consideration or reasonable notice.  Plaintiff GOUGH would aver that any anchorage permit granted by the

- 8 -

1   San Diego Port Authority and/or the San Diego Police Transit Police is

2   conditioned on the understanding that such permit was not revocable nor could

3   that same permit be transferred amended in any way.

4       22. Allegedly according to the defendant San Diego Harbor Police's

5   Transit Dock and Anchorage office personnel all permits for anchoring inside

6   San Diego Bay were filled because of the Memorial Day weekend.

7       23. Plaintiff, an experienced sailor/mariner and delivery captain, had

8   no choice in the matter other than the possibility of receiving a

9   misdemeanor ticket for anchoring without a permit.  In this regard, your

10  Plaintiff has been cited and/or harassed on more than several occasions by

11  the named defendant San Diego Harbor Police.  On other occasions named

12  defendants San Diego Port Authority and/or the San Diego Harbor Police

13  maliciously called plaintiff GOUGH A "Bouncer."

14      24. It is plaintiff GOUGH'S averment that The San Diego Port Authority

15  *viz.* San Diego Harbor Police have in place a controversial city

16  regulation/ordinance that requires all boaters to obtain a permit from the

17  Port Authority's Transit Police Dock Office in advance of any taking of

18  anchorage (i.e., affixing an anchor to the bottom of any location in the

19  Port Authority's limited jurisdiction).  This same regulation/ordinance has

20  been extensive litigated, challenged, and questioned by many of the boaters,

21  including the so-called "Bouncers" of San Diego Bay' live-abroad community

22  of sailor/mariners.

23      25.  Plaintiff GOUGH has been harassed for providing assistance to

24  other San Diego Bay boaters, known to him or otherwise, to make the sailing

25  experience for a "happiness of life," so to speak, experience in his

26  personal view of harmony, peace, and love of the United States of America

27

28

and its Peoples and certainly with the 14th Amendment to United States Constitution and/or the Bill of Rights, which plaintiff GOUGH believes is the constitutional duty of all Americans, Californians, and San Diegans.

26. Plaintiff GOUGH noticed, as an experienced seagoing Alaskan-raised experienced oceangoing fisherman/sailor/mariner, the local offshore marine area was in a small craft warning status due to adverse and inclement weather. With the coming of the night your Plaintiff-captain with a passenger attempted to return to the safety of "La Playa" anchorage which is designated as a so-called "increment weather sanctuary" without the requirement of a permit.

27. After determining that the named defendant San Diego Harbor Police issued untimely small craft (flagged) warning was in effect Plaintiff GOUGH preceded put all-ready sails in the air in order to return to San Diego Bay for refuge.

28. Plaintiff GOUGH is an experienced sailor-mariner with a public reputation of same. In this regard, plaintiff GOUGH had ready his "sails" ready in the event of any emergency to maintain a "helm," to nautically speak. Albeit, some individuals (including the named respondents-defendants), including plaintiff GOUGH, have their own opinions as to the term "experienced," your elderly plaintiff GOUGH is generally accepted as a 10 years or more San Diego Bay live-abroad resident of this "Fair City by the Bay," community.

29. Plaintiff GOUGH avers his experience on the seas/oceans and San Diego city's bay to address any affirmative defenses that he was the cause of the incident leading to the unforeseeable and preventable beaching of *in rem* plaintiff Tyee or that even under the dire straits of the incident's environmental/maritime conditions he acted irresponsible and that such

- 10 -

1  actions/inactions was the reason/cause for the unintentional, unforeseeable,

2  and disastrous beaching of the Tyee.

3      30.  At that time Plaintiff GOUGH encountered great unforeseeable

4  difficultly in raising the Tyee's main sail because of a fouled halyard[4],

5  unable to clear the halyard in the increasing rough seas Plaintiff GOUGH

6  immediately abandoned this standard procedure and immediately commenced to

7  utilize the mizzen and jib sail to commence moving back into the bay.

8  Plaintiff also alleges that Petitioner would clarify that he uses both the

9  mizzen sail and the jib sail to maintain stability for, *inter alia*,

10  motoring.  Such usage of sails is not uncommon amongst knowledge sailor and

11  even "stink pot" power boaters to ensue a comfortable transit, i.e.,

12  journey, over rough seas/oceans.

13      31.  Plaintiff GOUGH's passenger is an experienced sailor/boater and was

14  very distressed, emotionally upset, and expressed concern regarding the rough

15  seas/oceans that were developing prior to the incident in question.

16      27.  Plaintiff GOUGH encountered great difficulty with the

17  reduced/available sails and in the approximately three hours of attempting to

18  sail around the tip of the jetty.  At approximately this time your plaintiff

19  GOUGH was approached by a U.S. Coast Guard vessel (to wit, a off-loaded

---

[4]  Plaintiff would also aver that the West Marine Bosun's Chair used in
emergencies to free halyards (manufactured by Taylor Made Products
(Model/SKU #568980)) has been voluntarily safety recalled by the local West
Marine stores due because "webbing construction on these items may fail and
may not be strong enough to support a person and the D-ring may fail under
stress, either of which could result in personal injury." *See* Exhibit "A"
(West Marine notification of recall of made-to-order product (no date on
notice).  The importance of this averment is that the 230 lbs. Plaintiff, a
FAA certified master parachute rigger, and along with being the captain of
the *in rem* co-plaintiff Tyee considered using this *alleged* marine *emergency*
device and determined same was not reliable under the distress and increment
sea/weather conditions.  Moreover, the fact existed that he was responsible
for the passenger at the time of the incident.  Thusly, Plaintiff would
allege that due to his unforeseeable, unexpected, and aggravating
circumstance at the time of the marine distress emergency Plaintiff acted
responsibly and in accordance with his seafarer's skills.

- 11 -

Zodiac®-type rubber tender) and was asked if he or his passenger and *in rem* plaintiff Tyee was in trouble as they had been watching him for the last three hours or more hours. Plaintiff GOUGH conveyed that he was experiencing unforeseeable and uncorrectable equipment failure and was obviously experiencing great difficulty in reaching upwind past the said jetty. This was due to the obvious fact he was disabled due to equipment failure, *en fortiori,* the inability to raise the main sail and would request a short tow of approximately a quarter of a mile to clear the jetty tip and he would be able to sail safely back into San Diego bay. The instant defendant U.S. Coast Guard had ". . . any person in charge of the [rescue] vessel, to render assistance to every person [including the captain and the watercraft/vessel] found at sea in danger of being lost." The Law of the Seaman, Robert Force & Martin J. Norris, Thomson, West Pub. (2003), § 25.13.

28. Plaintiff GOUGH appeared calm to alleviate his personal concerns of life, limb, and his captainship's concern first for his inexperience passenger and lastly the vessel. Such expressed control and expressed emotional calmness is not uncommon for maintaining control of ever-increasing, aggravating, and developing clear and dangerous situation as detailed above and below.

29. The said experienced named defendant U.S. Coast Guard's investigation crew *joint* response was positive in plaintiff GOUGH's seafarer's opinion, as further confirmed & affirmed by the crew of the inflatable. However, a very, very, verily unexpected event occurred in that the same on-site professional seafarers felt compelled to request permission from an unknown superior officer, not present at that time, to take Petitioner's Tyee in tow. After a very short discussion the same seafarers informed plaintiff GOUGH that they were ordered that they were not authorized to provide any assistance, whatsoever, to him, his passenger, or otherwise to mitigate or alleviate any dangers to life, limb, or property, and they

- 12 -

abandoned defendant-captain GOUGH, his passenger, and the *in rem* defendant

sailing vessel Tyee and without any further discussion or assistance left

said plaintiff parties and plaintiff GOUGH's passenger to the dangers of the

sea/ocean conditions that was rapidly deteriorating.  . The instant

defendant U.S. Coast Guard had ". . . any person in charge of the [rescue]

vessel, to render assistance to every person [including the captain and the

watercraft/vessel] found at sea in danger of being lost." The Law of the

Seaman, Robert Force & Martin J. Norris, Thomson, West Pub. (2003), § 25.13.

30. When the defendant Coast Guard's safety · & rescue crew asked

plaintiff-captain Gough if he was in trouble, Plaintiff-captain replied "yes"

and needed immediate maritime distress emergency assistance in returning to

the safety of San Diego city's inner bay's increment weather sanctuary at La

Playa cove. Moreover, Plaintiff GOUGH additionally informed them that he was

in danger of going ashore if the *in rem* defendant Tyee's anchor should failed

in the small craft weather ocean conditions that were increasingly getting

rougher. Plaintiff-captain told the defendant Coast Guard's safety & rescue

crew that **if** his anchor failed to hold purchase the *in rem* defendant Tyee

would be in danger of being beached or worst, to wit, endangering the life,

limb and personal property of both members of the crew of *in .rem* defendant

Tyee.

31. These professional safety & rescue crew of the named defendant U.S.

Coast Guard expressed no obviously perceivable concerns which

confirmed/affirmed and reassured your plaintiff-captain GOUGH's experienced

observations.  Nonetheless, the U.S. Coast Guard's professional safety &

rescue crew assured this very, very, verily tired elderly plaintiff-

captain/sailor/mariner GOUGH and his nervous inexperienced passenger that

they would remain in the immediate area and that all he had to do is call

them on Channel 16 VHF (the marine emergency channel) and that they would

respond with assistance to protect his and his passenger's life & limb and

worldly possession including the U.S. documented vessel *in rem* defendant

Tyee.    .    The instant defendant U.S. Coast Guard had ". . . any person in

charge of the [rescue] vessel, to •render assistance to every person

[including the captain and the watercraft/vessel] found at sea in danger of

being lost."    The Law of the Seaman, Robert Force & Martin J. Norris,

Thomson, West Pub. (2003), § 25.13.

32. Approximately 10:30 p.m. that same night plaintiff-captain GOUGH

awoke when he felt the bottom of his vessel very slightly striking the a hard

surface, possibly the beach's bottom, he immediately called the defendant

Coast Guard on "Channel 16" and told them that he had a further aggravating

developing emergency situation and was possibility was dragging the *in rem*

defendant Tyee's anchor with a clear and present threat that he, his

passenger along with the Tyee *may* be going up on the beach.    The defendant

U.S. Coast Guard Channel 16 radio communication/dispatcher acknowledged his

transmission[5] and told me help is on the way and was approximately 20 minutes

passed and a San Diego Harbor Police vessel under subordinate marine duty to

the named defendants U.S. Navy, the U.S. Coast, and the San Diego Port

Authority arrived and stood by approximately 50' to 100' feet seaward of

plaintiff-captain GOUGH's *in rem* co-plaintiff Tyee's *portside* of the sailing

vessel.

---

[5]  Plaintiff-captain GOUGH would humbly inform the Court and the other named
defendants and other interested parties that he is a licensed HAM radio
operator (License No. KE6YYH) to dispel and contention that he was in a
state of panic or other emotional state that negate the clear and present
dangerous aggravating situation; that was developing over this long
protracted period of distress and the hiatus between his safely "setting his
anchor," so to speak, of the *in rem* defendant Tyee and the period of time
before the May Day call to the U.S. Coast Guard safety & rescue Channel 16
dispatcher.

VERIFIED ADMIRALTY & MARITIME COMPLAINT

33. The named defendant San Diego Harbor Police commandeered, *i.e.,* took command of the situation (including plaintiff GOUGH's passenger-companion Ms. Jacqueline Lambert, and the U.S. documented sailing vessel and *in rem* co-plaintiff Tyee), and ordered the passengers[6] at this time to don, *i.e.,* put-on life jackets and get into the *in rem* defendant Tyee's tender/dinghy which was already in the water along side. The U.S. documented sailing vessel, *in rem* co-plaintiff Tyee, was still safely upright and afloat but "soft aground,"[7] to nautically state, but rocking back and forth on the deep water draft keel with the incoming 2' to 3' wind-swell driven surf waves.

34. When plaintiff-captain GOUGH complied with the Harbor Police instructions to abandon the *in rem* co-plaintiff Tyee by going to his *lifeboat*/dingy he was assuming that they would take a line off the *in rem* co-plaintiff Tyee's bow and rotate the sailing vessel off the soft grounding into deeper water where plaintiff GOUGH would be able to re-anchor safely he

---

[6]  Plaintiff-captain GOUGH avers that at this point-in-time he was ordered to turn-over command of the *in rem* co-plaintiff Tyee to the named defendant San Diego Harbor Police; thusly, entrusting the same to act in a professional manner to save the personal property of plaintiff-captain GOUGH AND the *in rem* co-plaintiff Tyee with all necessary lawful, safe, and expeditious efforts without endangerment to any individuals at the incident or in the future if the Tyee should go aground, *i.e.,* beach itself without anyone at the helm to limit any damage to the *in rem* co-plaintiff Tyee.

[7]  The nautical term "soft ground" is used extensively by international, national, and local sailors/mariners to indicate a situation whereas a marine vessel has—for whatever reason—been driven or taken aground on a beach or other marine situation including the many shoals that are abundant throughout San Diego city's bay (especially in the South Bay area of the bay). *See also* Footnote, 5, *post* (for expanded allegation re relinquishment of the command of the *in rem* co-plaintiff Tyee to named defendant San Diego Harbor Police. The named defendant San Diego Harbor Police report states that the named *in rem* co-plaintiff Tyee was "hard" ground. This reported statement is challenged in light of the fact that the same personnel of that defendant made not attempt, whatsoever, to attach the emergency towline and attempt to determine whether it was hard aground and the fact that for $5,000.00 in U.S. currency that same co-plaintiff could be towed off the Zuniga shoal.

in fact carried the tow line sufficient to be used as a towline to safely

remove the sailing vessel off the shoal. The named defendant San Diego Harbor

Police refused to make any attempt to take a line attached to the sailing

vessel or further offer assistance to remove the sailing vessel from harms

way.  Plaintiff GOUGH was informed that if they attached a line and made any

attempt to recover my vessel from its grounding, they would be required to

impound the sailing vessel.

35.  Many past and present San Diego city's bay day/Day sailor/mariners

have lost their sail/motor vessels along with their worldly personal effects

after being impounded by the named defendant San Diego Harbor Police due to

the excessive impound fees and theft of their personal property from their

vessels while same watercrafts in the named defendants' storage area in the

collectively named defendants' watercraft/ocean vessel storage area located

in the South Bay of San Diego bay's harbor.[8]

36. The defendant San Diego Harbor Police then transported plaintiff

GOUGH, his passenger to the public police transit docks at Shelter Island,

San Diego, California.  Plaintiff GOUGH and his passenger were let-off on the

dock without so much as an inquiry as to their physical, psychological or

mental welfare.  Standing completely exhausted there in the cold and dark

night (approximately 12:00 o'clock at midnight) with soaking wet clothes, no

shoes or adequate clothing, or any other personal property (including any

monies or other means to make a distress call) the defendant San Diego Harbor

Police simply walked away without even accepting any gratitude in the form of

a thank-you for saving their lives & limb.  .  The instant defendant U.S.

Coast Guard had "... any person in charge of the [rescue] vessel, to render

---

[8]  Noteworthy, it may be proven through discovery that many if not all the
watercrafts/sailing vessels seized by the named defendant San Diego Harbor
Police are not only taken to a dock but are removed from the water to

assistance to every person [including the captain and the watercraft/vessel] found at sea in danger of being lost." The Law of the Seaman, Robert Force & Martin J. Norris, Thomson, West Pub. (2003), § 25.13.

37. Notwithstanding, the defendant San Diego Harbor Police did contact the named defendants civilian private business contractor/contractee marine distress emergency or non-emergency towing services, defendants Sea Tow and Vessel Assist, to inquiring as to whether they would provide private assistance but Plaintiff-captain of the Tyee was denied any help or assistance, whatsoever, because he was unable to verify the availability of a minimum of $5,000 dollars U.S. Currency in immediate cash funds to pay for their assistance.

38. A defendant U.S. Navy's San Diego bay's inner/outer sea/ocean security boat was at the police dock and theN tried to render assistance by offering to pull my vessel off the beach. However, according to the security boat's crew, their supervisor denied the authority to render any assistance.

39. There was a window of opportunity of approximately one hour before the tide started to go out during which time *in rem* co-plaintiff Tyee vessel could have safely pulled off the beach and there would have been no further problems or expenditure of time or monies.

40. During the following two days defendant Sea Tow under contract with the defendant U.S. Coast Guard was able to extract *in rem* co-plaintiff Tyee from the unforeseeable, unintentional, and preventable beaching with a great deal of unnecessary and costly damage to the vessel.

///

///

///

///

increase the seizure/retrieval costs to any rightful owner or other

- 17 -

V.

CAUSES OF ACTION AND CLAIMS FOR RELIEF

A.

> THE FAILURE OF THE NAMED DEFENDANT U.S. COAST GUARD NAVY TO RENDER MARITIME EMERGENCY DISTRESS ASSISTANCE WAS A VIOLATION OF UNITED STATES AND/OR INTERNATIONAL ADMIRALTY & MARITIME LAW AND/OR THE STATE OF CALIFORNIA'S INTERCOASTAL, WATERWAYS, AND HARBOR LAWS.

41.  Co-plaintiffs GOUGH and/or *in rem* Tyee incorporate by reference ¶¶ 1 through 4, 18-40, *supra,* as if specifically set forth hereunder and further alleges that the defendant U.S. Navy was civilly, if not criminally, liable for the maritime distress emergency and the unintentional, unforeseeable, preventiable beaching of the Tyee due directly and/or indirectly to its dereliction of the United States and state of California's maritime & admiralty and/or inter-coastal, waterways, and harbor laws of the seas/oceans that was the proximate cause of the of plaintiff GOUGH's compensatory losses associated with the events, inactions, and the incident of the beaching of the *in rem* defendant Tyee.

B.

> THE FAILURE OF THE NAMED DEFENDANT U.S. COAST GUARD NAVY TO RENDER MARITIME EMERGENCY DISTRESS ASSISTANCE WAS A VIOLATION OF THE UNITED STATES AND/OR INTERNATIONAL ADMIRALTY & MARITIME LAW AND/OR THE STATE OF CALIFORNIA'S INTERCOASTAL, WATERWAYS, AND HARBOR LAWS.

42.  Co-plaintiffs GOUGH and/or *in rem* Tyee incorporate by reference ¶¶ 1 through 4, 18-41, *supra,* as if specifically set forth hereunder and further alleges that the defendant U.S. Coast Guard was civilly, if not criminally, liable for the maritime distress emergency and the unintentional, unforeseeable, preventable beaching of the sailing vessel Tyee due directly and/or indirectly to its dereliction of the United States

interested parties.

- 18 -

1   and state of California's maritime & admiralty and/or inter-coastal,

2   waterways, and harbor laws of the seas/oceans that was the proximate cause

3   of the of plaintiff GOUGH's compensatory losses associated with the events,

4   inactions, and the incident of the beaching of the *in rem* defendant Tyee.

C.

THE FAILURE OF THE NAMED DEFENDANT SAN DIEGO HARBOR
POLICE TO RENDER MARITIME EMERGENCY DISTRESS
ASSISTANCE WAS A VIOLATION OF THE UNITED STATES
AND/OR INTERNATIONAL ADMIRALTY & MARITIME LAW AND/OR
THE STATE OF CALIFORNIA'S INTERCOASTAL, WATERWAYS,
AND HARBOR LAWS.

43.   Co-plaintiffs GOUGH and/or *in rem* Tyee incorporate by reference ¶¶

1 through 4, 18-42, *supra,* as if specifically set forth hereunder and

further alleges that the defendant U.S. Navy was civilly, if not criminally,

liable for the maritime distress emergency and the unintentional,

unforeseeable, preventable beaching of the sailing vessel Tyee due directly

and/or indirectly to its dereliction of the United States and state of

California's maritime & admiralty and/or inter-coastal, waterways, and

harbor laws of the seas/oceans that was the proximate cause of the of

plaintiff GOUGH's compensatory losses associated with the events, inactions,

and the incident of the beaching of the *in rem* defendant Tyee.

D.

THE FAILURE OF THE NAMED DEFENDANT SAN DIEGO PORT
AUTHORITY TO PROPERLY TRAIN THE HARBOR POLICE TO
RENDER MARITIME EMERGENCY DISTRESS ASSISTANCE WAS A
VIOLATION OF ADMIRALTY & MARITIME LAW AND/OR THE
STATE OF CALIFORNIA'S INTERCOASTAL, WATERWAYS, AND
HARBOR LAWS.

44.   Co-plaintiffs GOUGH and/or *in rem* Tyee incorporate by reference ¶¶

1 through 4, 18-43, *supra,* as if specifically set forth hereunder and

further alleges that the defendant U.S. Navy was civil, if not criminally,

liable for the maritime distress emergency and the unintentional,

unforeseeable, preventable beaching of the Tyee due directly and/or

- 19 -

indirectly to its dereliction of the United States and state of California's

maritime & admiralty and/or inter-coastal, waterways, and harbor laws of the

seas/oceans that was the proximate cause of the of plaintiff GOUGH's

compensatory losses associated with the events, inactions, and the incident

of the beaching of the *in rem* defendant Tyee.

E.

> THE FAILURE OF THE NAMED DEFENDANTS SEA TWO AND/OR
> VESSEL ASSIST TO RENDER MARITIME EMERGENCY DISTRESS
> ASSISTANCE WAS A VIOLATION OF THE UNITED STATES
> AND/OR INTERNATIONAL ADMIRALTY & MARITIME LAW AND/OR
> THE STATE OF CALIFORNIA'S INTERCOASTAL, WATERWAYS,
> AND HARBOR LAWS.

44.   Co-plaintiffs GOUGH and/or *in rem* Tyee incorporate by reference ¶¶

1 through 4, 18-44, *supra,* as if specifically set forth hereunder and

further alleges that the defendant U.S. Navy was civilly, if not criminally,

liable for the maritime distress emergency and the unintentional,

unforeseeable, preventable beaching of the Tyee due directly and/or

indirectly to its dereliction of the United States and state of California's

maritime & admiralty and/or inter-coastal, waterways, and harbor laws of the

seas/oceans that was the proximate cause of the of plaintiff GOUGH's

compensatory losses associated with the events, inactions, and the incident

of the beaching of the *in rem* defendant Tyee.

45.   Furthermore, co-plaintiffs GOUGH and/or Tyee would allege as a

claim for relief that the financial self-interest of the two named civilian

private business entities was the proximate cause of the dereliction of any

civil, if not criminal duty, to render assist to a fellow mariner in a time

of marine emergency distress under the commonly known "Mariner's Code of

Conduct" and/or the traditional "Law of the Seamen"[9] so to speak—

---

[9]   Plaintiff GOUGH references to "The Law of the Seaman," Robert Force &
Martin J. Norris, Thomson & West Pub. (2003) and borrows those authors' more
traditional term logy for any recognized national/international conceptual

notwithstanding immediate monetary compensation for any independent contract/agreement between co-plaintiff GOUGH and itself.

F.

THE FAILURE OF THE NAMED DEFENDANT SAN DIEGO PORT AUTHORITY TO PROVIDE TRAINING TO ITS SAN DIEGO HARBOR POLICE TO RENDER MARITIME EMERGENCY DISTRESS ASSISTANCE WITHOUT DUE CONSIDERATION TO ANY CONTRACTUAL OBLIGATION, IF ANY, TO ANY CIVILIAN PRIVATE BUSINESS ENTITY WAS A VIOLATION OF THE "MARINER'S CODE OF CONDUCT," "LAW OF THE SEAMAN," EMBODIED WITHIN UNITED STATES AND/OR INTERNATIONAL ADMIRALTY & MARITIME LAWS AND/OR THE STATE OF CALIFORNIA'S INTERCOASTAL, WATERWAYS, AND HARBOR LAWS.

46.   Co-plaintiffs GOUGH and/or *in rem* Tyee incorporate by reference ¶¶ 1 through 4, 18-45, *supra,* as if specifically set forth hereunder and further alleges that the defendant San Diego Port Authority was civilly, if not criminally, liable for the maritime distress emergency and the unintentional, unforeseeable, preventable beaching of the Tyee due directly and/or indirectly to its dereliction of the United States and state of California's maritime & admiralty and/or inter-coastal, waterways, and harbor laws of the seas/oceans that was the proximate cause of the of plaintiff GOUGH's compensatory losses associated with the events, inactions, and the incident of the beaching of the *in rem* defendant Tyee.

47.   Furthermore, co-plaintiffs GOUGH and/or Tyee would allege as a claim for relief that the financial self-interest or other interests of the San Diego Port Authority to drive out the "Bouncers," out of San Diego city's bay was the proximate cause of the dereliction of any civil, if not criminal duty, to train their subordinate civilian personnel to render assist to a local mariner in a time of marine emergency distress under the commonly known "Mariner's Code of Conduct," so to speak—notwithstanding

term/code for mariners' law, *i.e.*, "Law of the Seaman," of the Sea/Ocean code of conduct on national/international waters/seas/oceans.

immediate monetary compensation for any independent contract/agreement between co-plaintiff GOUGH and itself.

VI.

PRAYER

48. WHEREFORE, your *in personam* plaintiff GOUGH along with *in rem* co-plaintiff Tyee prays for the following:

A). Declaratory relief regarding the admiralty & maritime duties of each of the named defendants and their subordinate personnel whether military personnel and/or civilian contractor/contractees and their individual employees; and

B) Injunctive relief in the form of any protective orders to ensure that plaintiff GOUGH does not suffer any further damages, including financial and/or emotional distress pending the final adjudication of this admiralty & maritime complaint.

C) That the Court and/or the requested Jury issue a verdict of guilty of the causes of actions and provide the following claims for relief:

1). That compensatory damages be awarded in the amount of $30,000.00 in U.S. Currency;

2) That exemplary damages be awarded against each of the named defendant-organization in the amount of $3,000,000.00 in U.S. Currency; and

3) That punitive damages be awarded against each of the named-organization's individual personnel whether civilian and/or *paramilitaty* and/or regular military personnel in the amount of $3,000,000.00 each in U.S. Currency according to proof at the Court/Jury trial.

D) That the Honorable Court decree all available equity relief as deemed appropriate at every stage of this civil complaint pending final adjudication of the allegations of the causes of action and claims for relief.

- 22 -

1    E)    For Justice, Truth, and Equity your co-plaintiffs GOUGH and Tyee

2    pray!

3    RESPECTFULLY requested and submitted this _28_ day of _July 2008_,

4    2008, in the year of my savior Jesus, de Nazareth, el Galilean, de Judah, el

5    Christ & Messiah!

6    _____

7    H.W. Gough, Petitioner, *Pro Per*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED ADMIRALTY & MARITIME COMPLAINT

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
H.W. GOUGH (IN PERSONAM)
"TYEE" (IN REM)

**DEFENDANTS**
U.S. NAVY, U.S. COAST GUARD, S.D.
PORT AUTHORITY, S.D HARBOR POLICE
VESSEL ASSIST AND SEA TOW

FILED

2008 JUL 28 PM 4:1

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ CAH DEPUTY

'08 CV 1360 BTM BLM

**(b)** County of Residence of First Listed Plaintiff SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
US DISTRICT COURT

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☑ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☑ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
F.R. CIV.P. 9(H)   28 USC § 1331   U.S. CONST. ART III
Brief description of cause:
VIOLATION OF MARITIME DISTRESS ASSISTANCE

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE 7/28/08

SIGNATURE OF ATTORNEY OF RECORD   H.W. Gough

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____